# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHLEEN PITCHFORD,

    Plaintiff,

v.

UPMC MERCY,

    Defendant.

CIVIL ACTION NO.

**COMPLAINT IN CIVIL ACTION AND DEMAND FOR A JURY TRIAL**

FILED ON BEHALF OF PLAINTIFF:
Kathleen Pitchford

COUNSEL OF RECORD FOR THIS PARTY:

Joseph D. Pometto, Esquire
PA ID No.: 316346

428 Forbes Avenue
The Pittsburgher
Suite 400
Pittsburgh, PA 15219
Phone: 412.613.9323
Fax: 412.288.8943

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN PITCHFORD, ) | CIVIL ACTION NO. |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT IN CIVIL ACTION AND** |
| ) | **DEMAND FOR A JURY TRIAL** |
| UPMC MERCY., ) | |
| ) | |
| Defendant ) | |

## COMPLAINT IN CIVIL ACTION AND DEMAND FOR A JURY TRIAL

AND NOW, comes the Plaintiff, Kathleen Pitchford, by and through her attorney, Joseph D. Pometto, Esquire, and files this Complaint in Civil Action and, in support thereof, avers as follows:

### Introduction

1. Plaintiff, Kathleen Pitchford (hereinafter "Ms. Pitchford"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq.

2. Plaintiff, Kathleen Pitchford, is an adult individual, is a citizen of the United States and a resident of Pennsylvania. At all times relevant to this suit, until her termination on April 17, 2017 she was employed with University of Pittsburgh Medical Center ("UPMC") Mercy.

2

3. The Defendant is University of Pittsburgh Medical Center ("UPMC") Mercy. The Defendant's location where Kathleen Pitchford worked is UPMC Mercy, 1400 Locust Street, Pittsburgh, PA 15219.

### Jurisdiction

4. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et. seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq.

### Venue

5. Venue is proper in this judicial district as Plaintiff was employed by UPMC Mercy in this judicial district at the time of her termination, Plaintiff's employment records are maintained by UPMC Mercy in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

### Statement of Facts

6. Ms. Pitchford began working at UPMC Mercy Hospital, in the Seven Sisters Gift Shop in December 2016.

7. Ms. Pitchford is a devout Catholic.

8. From the time Ms. Pitchford began working at UMPC, her schedule was consistently Monday, Friday, and every other weekend.

9. This schedule allowed Ms. Pitchford to attend Catholic holiday and church services on a regular basis.

10. During her time in the Gift Shop, Ms. Pitchford received positive comments from customers and patients commending her for her kindness and attention to individual needs.

11. On April 10, 2017, Ms. Pitchford arrived at work and was surprised to see that her supervisor, Jo Ellen Pitts, had scheduled her to work Thursday, April 13, 2017, which was Holy Thursday (hereinafter "Holy Thursday").

12. Ms. Pitts had handwritten a new schedule that was posted on Monday, April 10, 2017.

13. Normally, the schedule is prepared and posted the week before.

14. Thus Ms. Pitts had taken it upon herself to alter the schedule on Monday, April 10, 2017 without prior notice or consultation with the employees.

15. Holy Thursday is the Thursday before Easter Sunday and is a Catholic Holiday commemorating the Last Support of Jesus Christ. It is one of the holiest days in the Catholic Faith.

16. Ms. Pitchford, as stated, is a devout Catholic and she never misses mass on Holy Thursday at 7:00 p.m.

17. Immediately upon seeing that she was scheduled to work Holy Thursday, Ms. Pitchford made a verbal request for religious accommodation and asked Ms. Pitts if she could be given the day off to observe the holiday.

18. Ms. Pitts told Ms. Pitchford that they could talk about Ms. Pitchford's request on Thursday (the actual holiday that Ms. Pitchford had requested accommodations for).

19. Ms. Pitts appeared upset by the conversation and informed Ms. Pitchford that she would have to close the store on Thursday if Ms. Pitchford was unable to work.

20. The same day, Monday, April 10, 2017, Ms. Pitchford wrote an email to Ms. Pitts informing her that she never misses mass on Holy Thursday at 7:00 p.m.

21. Ms. Pitchford also informed Ms. Pitts that her normal schedule does not have her working on Thursdays and had the schedule been put out as normal, Ms. Pitchford would have requested it off.

22. Ms. Pitchford was upset by the sudden change in schedule, especially considering she had worked the prior Saturday upon request and she had always come in early when extra help was needed.

23. Over the next two days, Ms. Pitchford called Nicole Morelli of UPMC's Human Resources department; however, she never received a return call.

24. On April 12, 2017, Ms. Pitts emailed Ms. Pitchford informing her that she had to come in on Thursday.

25. Ms. Pitchford responded by telling Ms. Pitts that she would not be able to make it into work on Holy Thursday.

26. Ms. Pitts subsequently responded by telling Ms. Pitchford that "this isn't an option, you need to be here to learn the machine," in reference to lottery machine training scheduled for Holy Thursday.

27. Ms. Pitchford then emailed Robert Neumeyer, Ms. Pitts' supervisor, informing him that she was not available to work on Thursday due to the holiday.

28. Mr. Neumeyer was familiar with the lottery machine and knew that it was a "self-serving" machine and easily learnable in a matter of minutes.

29. Mr. Neumeyer called Ms. Pitchford and informed her that she was not required to work on Holy Thursday and that it was not necessary for her to come in on that day.

30. As such, Ms. Pitchford did not come in to work on Holy Thursday and was under the belief that the issue had been resolved.

31. The following Monday, April 17, 2017, Ms. Pitchford reported for work at 4:00 p.m. and she was called into the office by Ms. Pitts.

32. At this meeting, Ms. Pitts informed Ms. Pitchford that she was being terminated due to "performance."

33. This termination occurred on the first workday immediately following her request for religious accommodation.

34. Ms. Pitts claimed the termination was due to "performance," but this was clearly a pretext for Ms. Pitchford's religious beliefs.

35. Ms. Pitts had expressed anti-Catholic views to Ms. Pitchford in the past, explaining to Ms. Pitchford that she left the Catholic Faith and that she was anti-Catholic because she was not permitted to be married in the church five years ago.

36. In addition to discriminating against Ms. Pitchford based on her religion, UPMC Mercy also discriminated against Ms. Pitchford based on her age and disability.

37. Ms. Pitchford is 57 years old.

38. Ms. Pitchford has a Chron's disease diagnosis.

39. Ms. Pitchford told Ms. Pitts that she suffers from Chron's disease.

40. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she prefers to hire only young college age employees because they move faster and have better memories.

41. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she wanted to fire older employees because they cannot move fast enough.  She also stated that this was true of a certain employee who was older and had a suffering memory.

42. The first month on the job, Ms. Pitts told Ms. Pitchford that the job was not great for her because of her Chron's disease illness.

43. Ms. Pitchford explained to Ms. Pitts that she had a weakened immune system. Ms. Pitts then told Ms. Pitchford that customers sometimes spit on the Shop's clerks and there is blood on the dirty money.

44. Ms. Pitts once handed Ms. Pitchford a handwritten note stating that she was not to wash her hands in the storage sink. She also wrote on the same note that Ms. Pitchford was not to step outside of the store to get air. Ms. Pitts kept the store air extremely hot.

45. Ms. Pitts once told Ms. Pitchford that someone threw a used condom at her in the Gift Shop.

46. On March 14, 2018 the Equal Employment Opportunity Commission issued the Plaintiff a Right to Sue Letter, attached here as **Exhibit 1**.

**Count I: Religious Discrimination (Title VII of the Civil Rights Act of 1964)**
**and**
**Count II: Religious Discrimination (Pennsylvania Human Relations Act "PHRA")**

47. All previous paragraphs are incorporated as though fully set forth herein.

48. Ms. Pitchford is within a protected class on the basis of religion; she is a devout, practicing Catholic.

49. Ms. Pitchford requested Holy Thursday off of work in order to observe Holy Thursday and attend mass, as she does every year.

50. Ms. Pitchford informed Ms. Pitts, Ms. Morelli, and Mr. Neumeyer of UPMC Mercy of the conflict between her work schedule and her observance of Holy Thursday.

51. As a result of her not being present at work on Holy Thursday, she was fired on Monday, April 17, 2017.

**Count III: Failure to Accommodate Religious Beliefs (Title VII of the Civil Rights Act of 1964)**
**and**
**Count IV: Failure to Accommodate Religious Beliefs (Pennsylvania Human Relations Act "PHRA")**

52. All previous paragraphs are incorporated as though fully set forth herein.

53. Ms. Pitchford is within a protected class on the basis of religion; she is a devout, practicing Catholic.

54. Ms. Pitchford requested Holy Thursday off of work in order to observe the Catholic holiday and attend mass, as she does every year.

55. Ms. Pitchford informed Ms. Pitts, Ms. Morelli, and Mr. Neumeyer of UPMC Mercy of the conflict between her work schedule and her observance of Holy Thursday.

56. Despite being notified of Ms. Pitchford's request to observe Holy Thursday and Mr. Neumeyer's assessment that the lottery machine could be learned in a matter of minutes, Ms. Pitchford was not afforded the day off after having been scheduled to work at the last minute.

57. As a result of her not being present at work on Holy Thursday, she was fired on Monday, April 17, 2017.

**Count V: Hostile Work Environment based on Religious Discrimination (Title VII of the Civil Rights Act of 1964)**
**and**
**Count VI: Hostile Work Environment based on Religious Discrimination (Pennsylvania Human Relations Act "PHRA")**

58. All previous paragraphs are incorporated as though fully set forth herein.

59. Ms. Pitchford is within a protected class on the basis of religion; she is a devout, practicing Catholic.

60. Ms. Pitts had expressed anti-Catholic views to Ms. Pitchford in the past, explaining to Ms. Pitchford that she left the Catholic Faith and that she was anti-Catholic because she was not permitted to be married in the church five years ago.

61. Ms. Pitts demanded that Ms. Pitchford come to work on Holy Thursday to "learn the machine," knowing that it was a religious holiday for Ms. Pitchford, despite the machine being "self-serving" and easy to learn in minutes.

62. Ms. Pitts unilaterally changed the schedule the week of Holy Thursday to have Ms. Pitchford work on Holy Thursday, knowing that Ms. Pitts was a devout Catholic and regularly celebrated Catholic holidays.

## Count VII: Retaliation based on Religious Discrimination (Title VII of the Civil Rights Act of 1964) and Count VIII: Retaliation based on Religious Discrimination (Pennsylvania Human Relations Act "PHRA")

63. All previous paragraphs are incorporated as though fully set forth herein.

64. Ms. Pitchford is within a protected class on the basis of religion; she is a devout, practicing Catholic.

65. Ms. Pitts had expressed anti-Catholic views to Ms. Pitchford in the past, explaining to Ms. Pitchford that she left the Catholic Faith and that she was anti-Catholic because she was not permitted to be married in the church five years ago.

66. Ms. Pitts demanded that Ms. Pitchford come to work on Holy Thursday to "learn the machine," knowing that it was a religious holiday for Ms. Pitchford, despite the machine being "self-serving" and easy to learn in minutes.

67. Ms. Pitts unilaterally changed the schedule the week of Holy Thursday to have Ms. Pitchford work on Holy Thursday, knowing that Ms. Pitts was a devout Catholic and regularly celebrated Catholic holidays.

68. As a result of discrimination, Ms. Pitts was fired on Monday, April 17, 2017.

**Count IX: Age Discrimination (Age Discrimination in Employment Act "ADEA")**
**and**
**Count X: Age Discrimination (Pennsylvania Human Relations Act "PHRA")**

69. All previous paragraphs are incorporated as though fully set forth herein.

70. Ms. Pitchford is within a protected class on the basis of age; she is a 57-year-old woman.

71. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she prefers to hire only young college age employees because they move faster and have better memories.

72. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she wanted to fire older employees because they cannot move fast enough. She also stated that this was true of a certain employee who was older and had a suffering memory.

73. As a result of discrimination, Ms. Pitts was fired on Monday, April 17, 2017.

**Count XI: Hostile Work Environment based on Age Discrimination (Age Discrimination in Employment Act "ADEA")**
**and**
**Count XII: Hostile Work Environment based on Age Discrimination (Pennsylvania Human Relations Act "PHRA")**

74. All previous paragraphs are incorporated as though fully set forth herein.

75. Ms. Pitchford is within a protected class on the basis of age; she is a 57-year-old woman.

76. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she prefers to hire only young college age employees because they move faster and have better memories.

77. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she wanted to fire older employees because they cannot move fast enough. She also stated that this was true of a certain employee who was older and had a suffering memory.

**Count XIII: Retaliation based on Age Discrimination (Age Discrimination in Employment Act "ADEA")**
and
**Count XIV: Retaliation based on Age Discrimination (Pennsylvania Human Relations Act "PHRA")**

78. All previous paragraphs are incorporated as though fully set forth herein.

79. Ms. Pitchford is within a protected class on the basis of age; she is a 57-year-old woman.

80. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she prefers to hire only young college age employees because they move faster and have better memories.

81. During the course of Ms. Pitchford's employment, Ms. Pitts stated to Ms. Pitchford that she wanted to fire older employees because they cannot move fast enough. She also stated that this was true of a certain employee who was older and had a suffering memory.

82. As a result of retaliation, Ms. Pitts was fired on Monday, April 17, 2017.

**Count XV: Disability Discrimination (Americans with Disabilities Act "ADA")**
and
**Count XVI: Disability Discrimination (Pennsylvania Human Relations Act "PHRA")**

83. All previous paragraphs are incorporated as though fully set forth herein.

84. Ms. Pitchford is within a protected class; she has a Chron's disease diagnosis.

85. Ms. Pitchford told Ms. Pitts that she suffers from Chron's disease.

86. The first month on the job, Ms. Pitts told Ms. Pitchford that the job was not great for her because of her Chron's disease illness.

87. Ms. Pitchford explained to Ms. Pitts that she had a weakened immune system. Ms. Pitts then told Ms. Pitchford that customers sometimes spit on the Shop's clerks and there is blood on the dirty money.

88. Ms. Pitts once handed Ms. Pitchford a handwritten note stating that she was not to wash her hands in the storage sink. She also wrote on the same note that Ms. Pitchford was not to step outside of the store to get air. Ms. Pitts kept the store air extremely hot.

89. Ms. Pitts once told Ms. Pitchford that someone threw a used condom at her in the Gift Shop.

90. As a result of discrimination, Ms. Pitts was fired on Monday, April 17, 2017.

**Count XVII: Hostile Work Environment based on Disability Discrimination (Americans with Disabilities Act "ADA")**
**and**
**Count XVIII: Hostile Work Environment based on Disability Discrimination (Pennsylvania Human Relations Act "PHRA")**

91. All previous paragraphs are incorporated as though fully set forth herein.

92. Ms. Pitchford is within a protected class; she has a Chron's disease diagnosis.

93. Ms. Pitchford told Ms. Pitts that she suffers from Chron's disease.

94. The first month on the job, Ms. Pitts told Ms. Pitchford that the job was not great for her because of her Chron's disease illness.

95. Ms. Pitchford explained to Ms. Pitts that she had a weakened immune system. Ms. Pitts then told Ms. Pitchford that customers sometimes spit on the Shop's clerks and there is blood on the dirty money.

96. Ms. Pitts once handed Ms. Pitchford a handwritten note stating that she was not to wash her hands in the storage sink. She also wrote on the same note that Ms. Pitchford was not to step outside of the store to get air. Ms. Pitts kept the store air extremely hot.

97. Ms. Pitts once told Ms. Pitchford that someone threw a used condom at her in the Gift Shop.

**Count XIX: Retaliation based on Disability Discrimination (Americans with Disabilities Act "ADA")**
**and**
**Count XX: Retaliation based on Disability Discrimination (Pennsylvania Human Relations Act "PHRA")**

98. All previous paragraphs are incorporated as though fully set forth herein.

99. Ms. Pitchford is within a protected class; she has a Chron's disease diagnosis.

100. Ms. Pitchford told Ms. Pitts that she suffers from Chron's disease.

101. The first month on the job, Ms. Pitts told Ms. Pitchford that the job was not great for her because of her Chron's disease illness.

102. Ms. Pitchford explained to Ms. Pitts that she had a weakened immune system. Ms. Pitts then told Ms. Pitchford that customers sometimes spit on the Shop's clerks and there is blood on the dirty money.

103. Ms. Pitts once handed Ms. Pitchford a handwritten note stating that she was not to wash her hands in the storage sink. She also wrote on the same note that Ms. Pitchford was not to step outside of the store to get air. Ms. Pitts kept the store air extremely hot.

104. Ms. Pitts once told Ms. Pitchford that someone threw a used condom at her in the Gift Shop.

105. As a result of retaliation, Ms. Pitts was fired on Monday, April 17, 2017.

**Request for Relief**

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against the Defendant for the following:

a. Back wages;

b. Front wages;

c. Plaintiff's legal fees;

d. Emotional damages;

e. Additional punitive damages;

f. Compensatory damages;

g. Pre-Judgment, interest, court costs and other such relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to enter judgment against Defendant in her favor, plus interest and costs.

                                     RESPECTFULLY SUBMITTED:

By:   */s/ Joseph D. Pometto*
        Joseph D. Pometto, Esquire
        PA ID No.: 316346
        428 Forbes Avenue
        The Pittsburgher
        Suite 400
        Pittsburgh, PA 15219
        Phone: 412.613.9323
        Fax: 412.288.8943